UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYL LOCKHART,

        Plaintiff,

v.                                                 Case No. 13-CV-13604
                                                    Honorable Denise Page Hood

TIM OLIVER,

        Defendant.

        _____/

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

        Before the Court is Defendant Tim Oliver's Motion for Summary Judgment **[Docket No. 18, filed March 17, 2014]**. Plaintiff filed a Response to this Motion on May 6, 2014 **[Docket No. 22]**. In this Motion, Defendant argues that because he "is neither Plaintiff's employer nor is he a respondent to the charge brought before the Equal Employment Opportunity Commission ("EEOC"), and further, because "the ninety day statutory period to bring a civil suit against a respondent to an EEOC charge has lapsed," Plaintiff's "claim must be dismissed in its entirety."

**I.    BACKGROUND**

        On August 21, 2013, Plaintiff Daryl Lockhart filed a Complaint of Employment Discrimination pursuant to Title VII of the Civil Rights Act of 1964 (as amended by the Equal Employment Opportunity Act of 1972) in which he alleged that he was wrongfully terminated on the basis of race and color.

Defendant Tim Oliver ("Defendant Oliver" or Defendant) is the President of Premier Panel Company ("Premier Panel"), a Michigan corporation with its principal place of business located at 12300 Merriman Road, Livonia, MI 48150. Premier Panel is a company that creates wall panels for homebuilders in the Southeast Michigan area. Defendant states that at the time of the alleged incident, Premier Panel employed thirty- six employees: eleven (11) African American, two (2) Native American, one (1) Hispanic, and twenty-two (22) Caucasian.

Defendant asserts that Premier Panel is a drug-free workplace and that all employees are notified of that status when they are hired and throughout their employment. Defendant states that the policy was not a new policy, had been in place at the time that Plaintiff was hired, and that employees who violate the policy are terminated. Defendant notes that on April 25, 2013, two first-shift (7:00 a.m. to 3:00 p.m.) Caucasian employees were questioned and terminated for violating the company drug-free workplace policy after returning from their lunch break smelling like marijuana. Following this occurrence, Defendant Oliver claims to have spoken to and reminded all of the remaining first and second shift employees of the company's drug-free workplace policy. Because Defendant Oliver worked during the day shift, he contacted the third-shift supervisor Brian Barton ("Barton") to inform him of what had occurred during the first shift. Defendant also asked Barton to remind the third-shift employees of the standing policy of a

drug-free workplace. Plaintiff Daryl Lockhart, along with his cousin Reginald Lockhart, worked during the third-shift (11:00 p.m. to 7:00 a.m.).

On April 26, 2013, shortly after Reginald Lockhart returned from break, Reginald asked Barton about the drug-free workplace policy "change" to which Barton informed Reginald Lockhart that the policy was not a new policy. Defendant alleges that Reginald Lockhart "soon became very disrespectful to Barton" and that this resulted in a verbal confrontation between Barton and Reginald Lockhart in which Plaintiff joined. Defendant contends that "as a result of the two employee's harassing him in a disrespectful tone, Barton felt intimidated and was concerned that the situation was escalating out of control." Barton then ordered Plaintiff and Reginald Lockhart to leave for the day. Plaintiff and Reginald Lockhart complied and left the premises. Neither Reginald nor Daryl was terminated at that time. Defendant Oliver was not present when the alleged activities involving Plaintiff occurred.

Defendant contends that at some time shortly after they left the premises, Reginald Lockhart sent several text messages to Barton which Barton deemed threatening in nature. Barton terminated Reginald Lockhart. Plaintiff Lockhart remained an employee of Premier Panel after his cousin was terminated. However, Defendant claims that during the four days following the confrontation, Plaintiff did not report to work and failed to notify anyone that he was not going to report to

work. On April 30, 2013, Plaintiff was terminated for violating the three day 'no-call- no show' policy by failing to appear to work and failing to phone a supervisor regarding his continuing absence.

On or about May 7, 2013, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging that he was terminated on the basis of race. In this Charge of Discrimination (in which Plaintiff claimed discharge based on race against Premier Panel), Plaintiff states that he began working for Premier Panel on or about August 25, 2012, as a Production Worker and last served as a Production Worker on April 25, 2013. Plaintiff claims that on or about April 24, 2013, his former supervisor "failed to communicate the details of a 'no smoking' policy change to all persons assigned to his detail . . . seemingly exclud[ing] African-Americans." He continues that his former supervisor "began to exchange unprofessional email messages with [his] cousin which indicate[d] that the cause of [his-Plaintiff's] termination was [his] cousin's 'mouth.'" Plaintiff also states that he is "aware of Caucasian Production Workers having violated production standards and failed to request leave in accord with established policy, but they were not disciplined."

On or about July 29, 2013, the EEOC contacted Plaintiff by letter. In this letter, the EEOC notified Plaintiff that Defendant responded to his claim and stated that Plaintiff "intervened without cause, in [an] argument between [his] working

4

supervisor, Brian Barton and [his] cousin, a co-worker, Reginald Lockhart." The EEOC stated that it was told that "an African American was hired into [Plaintiff's] position." Finally, the EEOC concluded that after reviewing Plaintiff's claim, the EEOC determined it was "unlikely that further investigation [would] result in a finding of a violation of the laws that the Commission [was] charged to enforce."

In his Motion for Summary Judgment, Defendant argues that Plaintiff has failed to sue a proper party, and Plaintiff's claim is barred by the 90-day statutory period in which to bring a civil suit against a respondent to an EEOC charge. Defendant Oliver is not Plaintiff's employer and was not the respondent to the EEOC charge. Since Defendant Oliver is not Plaintiff's employer and Plaintiff did not file a charge against Defendant Oliver, with the EEOC, prior to bringing charges against Defendant Oliver in a civil suit, the claim must be dismissed. Defendant also argues that amending the complaint to include Premier Panel is futile since "the [90-day] limitation period to file that civil suit expired on October 27, 2013."

In his response to Defendant's Motion, Plaintiff states that he believed that he filed suit against the right person. He asserts that it was always his intention to file suit against Premier Panel and that it was his understanding that Premier Panel and Defendant Tim Oliver were "the same employer." Plaintiff notes that he "is

5

pro per" and "was not fully aware of the questions asked on the paper work" that he was told to complete.

## II.   ANALYSIS

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  However, the Supreme Court has "never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).  Indeed, a *pro se* litigant "must conduct enough investigation to draft pleadings that meet the requirements of the federal rules." *Burnett v. Grattan,* 468 U.S. 42, 50, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).  Courts have refused to excuse *pro se* litigants who failed to follow basic procedural requirements such as meeting "readily comprehended" court filing deadlines.  *E.g., Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991); *Eglinton v. Loyer,* 340 F.3d 331, 335 (6th Cir.2003).  Likewise, courts have also refused to grant special or preferential treatment to *pro se* parties in responding to summary judgment motions.  *Brock v. Hendershott,* 840 F.2d 339, 343 (6th Cir.1988).

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which

is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Here, viewing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff's Complaint must be dismissed, because he failed to file suit against Premier Panel Company, instead filing suit against Tim Oliver, an employee at the company.

"In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81(1989) (citing 42 U.S.C. § 2000e-5(b)); see also *Morgan v. Washington Mfg. Co*., 660 F.2d 710, 711 (6th Cir .1981) (explaining the purpose of Title VII's administrative scheme is "to encourage reconciliation and arbitration of employee grievances prior to litigation"). It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ("right-to-sue letter"). *Puckett v. Tennessee Eastman Co*., 889 F.2d 1481, 1486 (6th Cir.1989) (citing 42 U.S.C. § 2000e-5(f)(1); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973)). The proper exhaustion of administrative

remedies gives the Title VII plaintiff a green light to bring an employment discrimination claim in court. See, e.g., *Patterson*, 491 U.S. at 181 ("Only after… the plaintiff has obtained a 'right to sue' letter from the EEOC, may he or she bring a Title VII action in court.").

Here, both Plaintiff and Defendant acknowledge that Plaintiff filed a charge of discrimination with the EEOC which was found to have been without fault. Plaintiff did, however, receive a right-to-sue letter before filing the underlying Title VII action. The letter notified Plaintiff that he had 90 days to file his Complaint. Plaintiff filed his Complaint within 90 days. Based on the fact that Plaintiff listed Premier Panel Company as the entity that discriminated against him in the EEOC Charge of Discrimination form, it appears Plaintiff knew Premier Panel was the proper party to be charged. Def.'s Mot. for Summ. J., Exhibit A, Charge of Discrimination. Plaintiff's Charge of Discrimination was filed against Premier Panel Company only, but the instant Complaint lists only Tim Oliver as the Defendant. Since Plaintiff failed to exhaust his administrative remedies with regards to the charge brought against Defendant Oliver, Plaintiff's case must be dismissed. Reviewing the record in this case and viewing the facts in the light most favorable to the Plaintiff, Defendant is entitled to summary judgment for the reason stated above.

Since Plaintiff has not filed a motion to amend the Complaint, the Court will not address the statute of limitations issue in regards to parties other than the Defendant at this time.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **[Docket No. 18, filed March 17, 2014]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this case be **DISMISSED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  February 11, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 11, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager